UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                    :
HAROLD HOFMANN and ANTHONY            :
LAWSON,                                              :
                                                    :
                    Plaintiffs,                     :
                                                    :                99 Civ. 8636 (GEL)
             v.                                     :
                                                    :           **OPINION AND ORDER**
DISTRICT COUNCIL 37, AMERICAN        :
FEDERATION OF STATE, COUNTY, AND     :
MUNICIPAL EMPLOYEES, AFL-CIO, et al.,  :
                                                    :
                    Defendants.                     :
-----------------------------------------------------------------x

Daniel Cherner, New York, New York, for plaintiffs.

Howard Reiss, Reiss, Eisenpress & Eisenberg (Lloyd
Eisenberg, on the brief), New York, New York, for
defendants District Council 37 Benefits Fund Trust,
Stanley Hill and Roslyn Yasser.

Loretta Redmond, Quirk and Bakalor, P.C., New York,
New York, for defendants Perot Systems Corporation,
John Bavis, David McKay, Richard Meyer, Jack
Demme and Mitchell Cohen.


GERARD E. LYNCH, District Judge:

        On September 1, 2004, the Honorable James C. Francis, United States Magistrate Judge,

filed a Report and Recommendation ("R&R"), recommending that this Court grant in part and

deny in part motions for summary judgment by defendants District Council 37, American

Federation of State, County, and Municipal Employees, AFL-CIO, and several of its employees

(collectively, "DC37") and the DC37 Benefits Trust Fund ("the Trust").  Plaintiffs filed

objections to the R&R on September 11, 2004, to which the Trust responded on September 28,

2004.  A partial objection was filed by defendant Perot Systems Corporation and several of its employees (collectively, "Perot" or the "Perot defendants") on September 13, 2004.

After these objections had been filed, the case was reassigned to the Honorable Michael B. Mukasey upon the recusal of the Honorable Kimba M. Wood, and on October 16, 2006, the case was reassigned to the undersigned judge. On October 31, 2006, the parties appeared for a conference, at which the Court granted plaintiffs' request for an extension of time to file a response to the Perot defendants' objections until November 22, 2006.  On November 22, 2006, plaintiffs submitted their response by letter.

Plaintiffs allege that they were wrongfully terminated on the basis of their age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the New York Human Rights Law, N.Y. Exec. Law § 296, by their employer, defendant DC37, and/or defendant Trust.  Plaintiffs also allege that these defendants violated contractual obligations to pay pension benefits, disability benefits, and severance pay.  The R&R recommends that summary judgment be granted as to the contractual claims, but denied as to the age discrimination claims.  Plaintiffs object to the former recommendation, but of course not to the latter.

The plaintiffs also sued the Perot defendants, alleging tortious interference with contract and tortious interference with business relationships.  The R&R recommends that summary judgment be granted as to the claim of tortious interference with contract, but denied as to the claim of tortious interference with business relationship.  Plaintiff objects to the former recommendation, while the Perot defendants object to the latter.

The matter is now fully submitted for decision.  Upon this Court's independent review of the submissions on these motions, Magistrate Judge Francis's R&R, as supplemented by this Opinion and Order, is adopted as the opinion of the Court, and the defendants' motions for summary judgment are granted in part and denied in part.

## I.      The Breach of Contract Claims Against DC37 and the Trust

Plaintiffs's objections to the R&R do not contest that any modification to a benefits plan governed by the Employee Retirement Income Security Act (ERISA) must be in writing, see 29 U.S.C. § 1102(a)(1), and that oral changes to a plan will not be enforced in the absence of fraud. (P. Mem. at 2-4.)  See Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988). Instead, plaintiffs re-assert their arguments that "everyone received severance pay," that summary judgment should be denied on this question because of defendants' failure to produce relevant documents in discovery, and that the "pension damages" are really a component of damages for plaintiff's other claims.  All of these arguments were thoroughly addressed by the R&R.

An independent review of the record reveals no evidence to support plaintiffs' claim that "everyone received severance pay."  (P. Ob. at 3.)  Indeed, plaintiffs' objections provide no citation to any record evidence at all on this point; nor, as Magistrate Judge Francis observed, have they "identified a single recipient, let alone established a practice."  (R&R at 23.)  As for the plaintiffs' contention that summary judgment should be denied because of defendants' failure to produce relevant documents, plaintiffs' objections offer no evidence that defendants in fact withheld anything.  In any event, discovery is over, and plaintiffs cannot show a genuine issue of material fact by blaming defendants for the lack of evidence supporting the breach of contract

claims.  Plaintiffs' argument that the pension damages should be treated as a component of the damages on their other claim, of course, does nothing to sustain their breach of contract claims as independent claims.

Plaintiffs also re-assert their argument that DC37 and the Trust are liable for the decision by First Unum, the disability carrier, to deny Mr. Hofmann's disability claim, because it was defendants' refusal to respond to First Unum's requests for information that caused the rejection of the claims.  Plaintiffs offer no evidence to support this contention, and an independent review of the record reveals none.  In fact, First Unum's letter notes that Mr. Hofmann himself did not respond to inquiries by the carrier, but says nothing regarding defendants' cooperation. (Eisenberg Dec. Ex. 35.)

## II.    The Tortious Interference with Contract Claims Against the Perot Defendants

Magistrate Judge Francis concluded that summary judgment should be granted as to the claim against the Perot defendants for tortious interference with contract, primarily because the plaintiffs had produced no evidence that the Perot defendants intended to interfere with the post-termination benefits to which plaintiffs were allegedly entitled.  Plaintiffs' objection argues that "the [Perot] defendants lied about [plaintiffs] and wanted to get them fired so that [the Perot defendants] could get millions of dollars more from DC37 and [the Trust], and so they could harm the Plaintiffs for blocking their attempts to do so."  (P. Ob. at 6.)  Plaintiffs cite to nothing in the record supporting this assertion.  Even assuming the Perot defendants did intend to cause plaintiffs' termination, however, the R&R correctly concludes that "there is no evidence whatever that the Perot Defendants intentionally interfered with [plaintiffs'] post-termination benefits."  (R&R at 8.)

Plaintiffs allege that the Perot defendants' behavior caused the termination of their employment, and thus the denial of the benefits.  (P. Ob. at 7.)  Plaintiffs adequately allege that the Perot defendants caused the denial of the benefits, but causation is not intent.  Even if the Perot defendants intended to cause the plaintiffs' firing and knew of the benefits to which plaintiffs assert they were entitled upon termination (see Hofmann Aff. Ex. C. ¶¶ 2-9), nothing in the record indicates that the Perot defendants knew or intended that the firing would result in the *breach* of the employers' obligations to provide severance pay and other benefits.  See Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993) (holding that claims for intentional interference with contract must allege "defendant's intentional inducement of the third party to breach or otherwise render performance impossible").  On the contrary, if the Perot defendants knew that the employer was obligated to provide such benefits, as plaintiffs assert, they would have every reason to expect that the benefits would be provided.  Thus, the motion for summary judgment on this claim must be granted.

## III.   The Tortious Interference with Business Relationship Claims Against the Perot Defendants

As the R&R noted, "plaintiffs assert that the Perot Defendants presented false criticisms of their performance to DC37 and [the Trust] and that this resulted in their being fired."  (R&R at 10.)  If true, this would constitute tortious interference with a business relationship.  The Perot defendants object to the R&R's conclusion that this claim should survive summary judgment, arguing that there is no evidence they "used dishonest, unfair, or improper means," Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994), to interfere with the business relationship between plaintiffs and their employers.

The dispute centers on the question of whether, as defendants' witnesses claimed, Hofmann pressured Perot personnel not to report project problems to DC37 and Trust officials.[1] (See, e.g., McKay Dep., Eisenberg Dec. Ex. 13, at 256-63). The Perot defendants do not deny having alleged to DC37 and Trust officials that Hofmann pressured them to hide project problems, but they argue that their statements were true or were made in good faith. (See R&R at 11, D. Ob. at 2-5.) The Perot defendants argue that "there is no evidence to support any other conclusion but that [they] had a good faith belief that Hofmann had not fully informed the [Trust] on the issues of the Project." (D. Ob. at 4.)

There is not much evidence to suggest that the Perot defendants acted in bad faith, but there is enough to survive summary judgment. In order to show that the Perot defendants' allegations were made in bad faith, plaintiffs essentially offer evidence suggesting that plaintiffs never engaged in the conduct reported by the Perot defendants. Hofmann and Lawson were terminated in part because they were suspected of "withholding relevant information that . . . resulted in increasing financial costs" to the DC37 defendants. (Memo from Yasser to Hill, Eisenberg Dec. Ex. 28). Hofmann alleges in his affidavits that this was a misimpression created by Perot officials, and that he did not withhold material information. (Hofmann Aff. Ex. C at ¶8.) Hofmann further claims that documents that the Perot defendants wanted to present to

---

[1] Hofmann's response to the Perot defendants' objections lists a number of alleged false claims made by the Perot defendants that pertain to issues other than whether Hofmann pressured Perot personnel not to report project problems (Letter from Daniel Cherner to the Court, Nov. 22, 2006, at 1-2), but these other alleged false claims pertain to the Perot defendants' work, not to plaintiffs' actions, and thus are largely irrelevant to the question of whether the Perot defendants' misrepresentations of plaintiffs' actions caused their termination.

DC37 officials were fabricated after the fact.  (Hofmann Dep., Eisenberg Dec. Ex. 18, at 562-66; see R&R at 11-12.)

In order to demonstrate that their accusations were made in good faith, the Perot defendants offer evidence suggesting that Hofmann had engaged in the misconduct of which they accused him.  In particular, the Perot defendants point to a report they created, attached to which there is a note, authenticated by Hofmann in his deposition, directing that the report not be passed along until he had reviewed it.  (Dunn Dec. Ex. Y and Z; see Dunn Dec. Ex. S., at 254; Id. at 511.)  But this note does not establish that Hofmann pressured Perot officials to withhold information from DC37 officials.  Giving Hofmann the benefit of all possible inferences, a reasonable factfinder could conclude that the note suggests only that he did not want a particular report distributed until he had read it.  This, in turn, could suggest that the Perot defendants had no basis to suggest he had pressured them to withhold information, which in turn could suggest that their allegations to that effect were made in bad faith.  Hofmann testified that he had not read the contents of the report at that point (Dunn. Dec. Ex. S. at 256), and that the cover memo saying that Hofmann had already been briefed on it was a "[t]otal fabrication."  (Id. at 255)  It is possible that a jury could find him to be telling the truth.

Nor does Hofmann's authentication of the note asking for more time to review the document demonstrate that he withheld material information from his employers.  Hofmann claims that he discussed the information in question with DC37 personnel.  (Hofmann Aff. ¶¶ 43-44.)  Obviously, if true, this would suggest he was not withholding it from them.  Hofmann's testimony may be "self-serving" (Perot Ob. at 3), but a jury would not be obligated to disbelieve it.  Again, evidence that Hofmann did not withhold material information from his

employers could suggest that the Perot defendants' allegations to that effect were made in bad faith.

The Perot objections also rely on the minutes of the July 14, 1998, meeting at which Hofmann either discussed the information at issue (according to Hofmann) or tried to prevent it from coming out (according to defendants).  (Perot Ob. at 3).  This evidence appears to contradict Hofmann's deposition, because the minutes do not record the discussion that Hofmann asserts too place.  This evidence is strong, but not definitive; nothing about the minutes indicate that they are a complete record of everything said at the meeting (Dunn. Dec. Ex. 1) and, as noted above, Hofmann also claimed to have conveyed the information in question to DC37 officials outside the context of that meeting.  If he did convey the information, either during the meeting or at another time, it would be reasonable to conclude he had not attempted to hide it, and if the Perot defendants knew or inferred that this was the case, their allegations would have been baseless.

Although Hofmann's testimony may "strain credulity" (R&R at 12), "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ," and on summary judgment "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A reasonable factfinder could credit Hofmann's claims that he was innocent of the behavior reported by the Perot defendants, and from this infer that the Perot defendants' accusations were made in bad faith.  Accordingly, summary judgment must be denied on the question of tortious interference with business relationships.

## CONCLUSION

For the reasons set forth above, the Report and Recommendation dated August 31, 2004, as supplemented by this Opinion and Order, is adopted as the opinion of the Court, and the defendants' motions for summary judgment (Docs. #159, 161, and 163) are granted in part and denied in part.

SO ORDERED:

Dated: New York, New York
      November 30, 2006

GERARD E. LYNCH
United States District Judge

9